UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ELIZAVETA ZLATKIS, in her individual
capacity and as Guardian of her two minor children
JOSHUA SELIMI and OLIVIA SELIMI,

                Plaintiffs,        Index No.:

  -v-

                                             **COMPLAINT**

NYPD OFFICER DEMITRIO RAPTIS
NYPD SERGEANT CHRISTOPHER COLON      **PLAINTIFFS DEMAND A**
NYPD SERGEANT JOHN DOE (LECLAIR)       **TRIAL BY JURY**
NYPD LEIUTENANT BRIAN GOLDBERG
NYPD OFFICER JOHN DOE (PORCELLI)

                Defendants.
------------------------------------------------------------------x

      The Plaintiffs Elizaveta Zlatkis and her two minor children Joshua Selimi and Olivia Selimi, by and through their attorneys Mancilla & Fantone, LLP and Joseph W. Murray, Esq., complaining of Defendants Officer Demitrio Raptis, Sergeant Christopher Colon, Sergeant John Doe (LeClair), Lieutenant Brian Goldberg, and Officer John Doe (Porcelli), in their professional capacities as non-civilian members of the New York City Police Department, and in their individual capacities, allege as follows:

## PARTIES

    1.     The Plaintiff Elizaveta Zlatkis is an individual residing in the State of New York, County of Queens, with her two minor children, Olivia Selimi (four years' old) and Joshua Selimi (fourteen years' old).

    2.     The Defendants Police Officer Demitrio Raptis, Sergeant Christopher Colon, Sergeant John Doe (LeClair), Lieutenant Brian Goldberg, Police Officer John Doe (Porcelli),

were at all times relevant to this Complaint members of the New York City Police Department ("NYPD") who participated in the execution of a search warrant at the Plaintiff's apartment and Plaintiff's subsequent criminal prosecution.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to adjudicate the instant action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 et seq. because the Plaintiff resides in this district and the entirety of the actions complained of herein occurred within this District.

## FIRST CAUSE OF ACTION

### The Recovery of Toy Guns From Plaintiff's Residence

5. On December 27, 2019, at approximately 6:00 a.m., the Defendants executed a search warrant at 99-06 67 Road, Apartment 4H, located in the county of Queens, where Plaintiff was residing at the time with her then husband and their two young children.

6. The documents related to the search warrant indicated that Plaintiff's then husband was suspected of possessing several firearms within the apartment and basement of the location. Much of the evidence was based on statements from one or more criminal informants.

7. The search warrant documents did not refer to or otherwise mention Plaintiff or her children, and there was no other evidence indicating that the Plaintiff or her children were aware of any illegal items located in the residence.

8. During the execution of the search warrant, the Defendants recovered several imitation firearms (or toy guns) from the Plaintiff's apartment.

9. The items recovered were located in a secret compartment beneath the vanity in the bathroom, which the Defendants accessed by using force to break the vanity.

10. Other items were recovered from boxes hidden within one closet, and one item was recovered from a camera bag belonging to Plaintiff's husband that was allegedly located in Plaintiff's bedroom.

11. The remainder of the items were recovered from an office in the basement of the building, which was secured behind a locked door.

12. Based on their extensive training and knowledge of firearms, as well as their ownership and daily use of such firearms, the Defendants knew at the time they recovered the items that they were imitation or toy firearms and not real firearms. For example:

   a. The word "blank" appeared on the exterior of a few of the items, indicating that they were incapable of firing real ammunition;

   b. The barrels of several of the items were intentionally closed-off during the manufacturing process, making them completely incapable of discharging a bullet;

   c. The manufacturers of several of the items, as displayed on the items' exteriors, are known manufacturers of imitation firearms;

   d. There were informational manuals located within several of the boxes from which the items were recovered that explained that the items were not actual firearms; and,

    e. The Defendants are trained and required to examine and "make safe" any firearms recovered in the field[1], and in performing this procedure at the Plaintiff's residence they must have discovered that the firearms were not authentic.

13. Plaintiff's husband, the target of the search warrant, was not at the residence when the Defendants executed the search warrant.

14. Plaintiff politely requested to view the search warrant that authorized the Defendants' search of her home, but the Defendants refused to allow her to see any such paperwork.

15. Plaintiff cooperated with the Defendants' demands and patiently waited approximately twenty-five minutes with her children while the Defendants searched her residence.

16. Without any probable cause, the Defendants also searched the bedrooms of Plaintiff's two children, which caused significant emotional trauma to the children.

17. Even though there was no evidence that Plaintiff was aware of the items hidden within her residence, the Defendants arrested Plaintiff.

18. As confirmed by body camera footage, after being placed in handcuffs, the Defendant requested to put on more appropriate clothing, asking for "any pair of pants." However, her request was denied.

---

[1] Pursuant to NYPD Patrol Guide § 218-23, the Defendants are required to make safe any firearm they encounter during a search. If the Defendants are unfamiliar with a firearm, they are required to notify a desk officer who will deploy the NYPD Emergency Services Unit ("ESU"), who are weapons experts. Members of the ESU were present when the Defendants recovered the imitation firearms during the search of Plaintiff's apartment.

19. As seen in the photo below, Plaintiff was wearing only a thin T-shirt, small shorts, and flip flops at the time of her arrest, having unexpectedly encountered the Defendants at her residence at approximately 6:00 a.m.



20. Despite the Winter weather, the Defendants refused to permit Plaintiff to change her clothing before removing her from her residence.

21. Defendants then transported her to the 112 Precinct, located in the State of New York, County of Queens.

22. Plaintiff was thereafter incarcerated for a period of approximately thirty hours until her arraignment, where she was released from custody.

23. The Defendants intended to confine Plaintiff during this time.

24. Plaintiff was aware of such confinement.

25. Such confinement was not privileged or otherwise justified.

26. During her confinement in the 112 Precinct, Plaintiff was not provided any alternative attire and was forced to remain in her sleeping attire, despite Plaintiff's repeated requests to arrange for someone to bring her more appropriate attire.

27. Also during such time, Plaintiff was subjected to harassment by Defendant Raptis, who repeatedly told Plaintiff that her husband was cheating on her, and inquired whether Plaintiff was going to stay in a relationship with her ex-husband or find somebody new because she deserved better. These comments were immediately humiliating to Plaintiff, who felt objectified by Defendant Raptis.

**The Defendants' Press Release Broadcasts the False Charges Against Plaintiff**

28. After recovering the items from the Plaintiff's residence, the Defendants posted on the 112 Precinct's Twitter page, which included a photograph displaying the items they had recovered, along with nine (9) members of the NYPD, including the Defendants, standing proudly in observance.

29. The Twitter post stated: "Great job yesterday from our Field Intelligence Officer and Special Operations Unit for a successful search warrant taking multiple guns off the streets of Forest Hills." [2]

---

[2] NYPD 12th Precinct Twitter Posting, Dated December 28, 2019 (accessed December 6, 2022) https://twitter.com/NYPD112Pct/status/1210968141897117697?ref_src=twsrc%5Etfw%7Ctwcamp%5Et weetembed%7Ctwterm%5E1210968141897117697%7Ctwgr%5E526dc6c3b7dff513c1b7e9fc6206497e9 3df3788%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fqns.com%2F2019%2F12%2Fforest-hills-woman-in-custody-after-search-uncovers-multiple-guns-in-her-home%2F



30. This post garnered several comments supporting the NYPD, and some attacking Plaintiff, like:

   a. "That type of woman should be up to something very big ..thank God she was found." (@Layla56722727, December 31, 2019);

   b. "Excellent work! No permits, get to jail, lawbreaker! I live nearby, so am relieved. And also, what abt keeping these guns in a home w children thus endangered?" (@marshaenewman, December 31, 2019);

    c. "Very good…some russian, Polish families in that area have become very militant." (@DJPrimeNugget December 31, 2019).

31. However, the majority of the comments came from members of the public who discerned from the photograph that the items recovered were not real firearms. These individuals left comments on the 112 Precinct Twitter's post, including:

    a. "Most everything in this pic looks like airguns. I'm calling BS on this." (@itsDietz, January 1, 2020);

    b. "Almost all of those are airsoft/pellet guns. Look how proud you all look posing in front of children's toys". (@PeterSchier1, January 1, 2020);

    c. "Lmfao you buffoons really having a press tour photo op over a stash of airsoft guns like you busted a gun running operation?" (@ReticulatingSp1, January 1, 2020);

    d. "Good job you dumbshits. You've grabbed three pellet guns, couple BB guns, and multiple airsoft guns. Why the hell would you set up a fake 'gun bust'? Make yourselves look better? Looks like you just raided some middle-schoolers backyard during a plink meet." (@Corgblam, January 2, 2020);

    e. "So…You ruined some poor kid's Christmas by stealing all of his airsoft gear?" (Jumpkix January 2, 2020).

32. The Twitter post remains public as of the date of this Complaint.

33. The Defendants' press release grabbed the attention of several publications that broadcasted the Defendants' false allegations to the community. For example:

    a. The publication QNS issued an article dated December 30, 2019, titled: "Forest Hills woman in custody after search of her home uncovers multiple guns."[3]

    b. A Forest Hills Post article published December 30, 2019, similarly titled: "Forest Hills Woman Arrested After Police Find Multiple Guns in her Home."[4]

34. These articles remain accessible online as of the date of this Complaint.

35. The Defendants knew they did not recover any item from Plaintiff's residence that constituted a firearm as defined by the New York Penal Law.

36. Nevertheless, Defendant Raptis executed **a sworn statement** indicating that he "is informed by Sgt. LaClair […] that he recovered one (1) zoraki 9mm firearm, one (1) zoraki 9mm revolver, one (1) ekol 9mm firearm, three (3) mondial .22 caliber firearms, one (1) RTS model 1962 firearm, one (1) Mondial .22 caliber firearm, and (1) Walther imitation pistol."

37. Defendant Raptis' statement also states that "he was present" when "officer Porcelli […] recovered three (3) .38 caliber starter-revolvers, one (1) black revolver."

38. Defendant Raptis also stated that he was present when "officer Lieutenant Goldberg […] recovered a .66 mm derringer pistol from inside of a camera bag located in the bedroom where defendant was found in the above apartment."

39. The Defendants, acting in concert, caused or otherwise knew that their false statements would be used by the Queens County District Attorney's Office to charge Plaintiff with felony offenses the Defendants knew she did not commit.

---

[3] https://qns.com/2019/12/forest-hills-woman-in-custody-after-search-uncovers-multiple-guns-in-her-home/ (accessed December 6, 2022)
[4] https://foresthillspost.com/forest-hills-woman-arrested-after-police-find-multiple-guns-in-her-home (accessed December 6, 2022).

40. Further, body camera footage confirmed that Plaintiff was not found in the same bedroom as the camera bag (which contained an alleged firearm), as indicated by Defendant Raptis' statement, but instead first encountered Defendants at her front door.

41. The Defendants, acting in concert, charged the Plaintiff with the following felony offenses, which they knew she did not commit: (i) criminal possession of a weapon in the first degree, a B felony, in violation of PL 265.04-2 (**"possesses ten or more firearms"**); (ii) criminal possession of a weapon in the second degree, a C felony, in violation of PL 265.03-2, and (iii) two counts of endangering the welfare of a child, an A misdemeanor, in violation of PL 260.10-1.

42. The Plaintiff was subsequently charged with (iv) four counts of possession of an imitation pistol, an unclassified misdemeanor, in violation of AC 10-131 G; and (v) three counts of unlawful possession of pistol or revolver ammunition, an unclassified misdemeanor, in violation of AC 10-131-I-3.

43. As stated above, all Defendants were aware that none of the items recovered from Plaintiff's apartment were operable firearms as defined by the New York State Penal Law, and thus could not form the basis of felony charges against the Plaintiff.

44. Despite the obvious falsity of the charges and the resulting damage to Plaintiff's life, the Defendants maintained their stance regarding the items recovered from Plaintiff's residence, and the Queens County District Attorney's Office accordingly refused to dismiss the felony charges against Plaintiff.

**The Plaintiff Exposes the Defendants Illegal Conduct and Her Charges Are Dismissed**

45. Plaintiff eventually was able to retain counsel who contacted members of the media and had articles published describing the Defendants' illegal conduct and the false charges they put forth against Plaintiff.

46. For example, the Queens Daily Eagle published an article dated December 11, 2020, titled: "Forest Hills woman fights year-long battle against fake gun charges."[5] The article explained:

> Queens prosecutors charged Zlatkis, 31, with first-degree criminal possession of a weapon — a charge that carries a possible 25-year prison sentence — and a few local news outlets covered the case.
>
> There was just one problem with the narrative and the charges: 21 of the 22 supposed firearms were airsoft rifles, toy replicas or starter pistols — the kind used at track meets — incapable of firing ammunition, according to the NYPD's own laboratory reports.
>
> The one actual firearm was rendered "inoperable" because the trigger, hand grip and internal components were all missing, according to the NYPD's firearms analysis.
>
> But a year after her Dec. 27, 2019 arrest, Zlatkis is still facing the first-degree weapons charge, which is based on possession of ten or more firearms. Queens District Attorney Melinda Katz has declined to drop the case against Zlatkis, who has refused to take a plea deal.
>
> The case has made her life hell, she said. A quick Google search of her uncommon name reveals why. The first six results are news articles about her arrest.

Id.

47. The 112 Precinct's above-mentioned Twitter posting received new comments in response to this and other publications that exposed the Defendants' conduct, including:

---

[5] https://queenseagle.com/all/forest-hills-woman-fights-year-long-battle-against-fake-gun-charges (accessed December 6, 2022)

a. "'As long as it looks like we confiscated real guns,' said the police, 'then it doesn't matter that these are fake theater props. So great job, us, getting a cool-looking photo, because that's literally all we ruined an innocent person's life to accomplish"; (@GuyWhoWroteThis, December 12, 2020);

b. "Am I hearing correctly that these are 'Toy airsoft guns'? I back the blue but not oathbreakers like you." (@kvdjr18, December 20, 2020);

c. "Look at these clowns, knowing that they're all fake but still posing like they actually served the community 🤣🤣🤣🤣🤣" (@malicious_arms, December 29, 2020).

48. In the wake of the bad press, the Queens County District Attorney's Office formally dismissed all felony charges against Plaintiff and proceeded forward with misdemeanor charges by way of a superseding information dated December 18, 2020.

49. In the superseding information, Defendant Colon retracted his and the other Defendants' false statements contained in the original felony information and instead alleged that Plaintiff was in possession of eleven imitation firearms.

50. The Court subsequently dismissed the possession of ammunition charges on February 25, 2022 based upon an insufficient pleading.

51. The Court also ordered a hearing in response to defense counsel's application pursuant to Mapp v. Ohio, which was premised on defense counsel's argument that the warrant that authorized the search of Plaintiff's home should be controverted.

52. On or about June 27, 2022, Plaintiff accepted an Adjournment in Contemplation of Dismissal ("ACD") with a one-day sealing in satisfaction of the remainder of the misdemeanor charges pending against her.

**Plaintiff Was Damaged Significantly by The Defendant's Illegal Conduct**

53. Plaintiff had no arrests prior to her felony arrest on December 27, 2019.

54. She was forced to experience approximately thirty (30) hours of unjustified incarceration due to the Defendants' false statements.

55. She was forced to endure a significant portion of this confinement in her sleeping attire, during which time she was subjected to harassment from Defendant Raptis.

56. In the wake of news reports alleging more than ten firearms were recovered from her residence, Plaintiff was terminated by her employer Enterprise Rent-a-Car.

57. Email correspondence confirms that any subsequent employment offers Plaintiff was able to obtain were rescinded due solely to her background check revealing the felony charges pending against her.

58. She was also denied permission to drive for Uber after her background check revealed the existence of multiple felony weapon possession charges.

59. Plaintiff experienced significant embarrassment and damage to her reputation as a result of the numerous news articles that broadcasted the Plaintiff's bogus felony charges and the false information put forth by the Defendants.

60. Plaintiff has also suffered severe emotion damages for which she has sought therapy, and has attended weekly therapy sessions since January of 2021.

61. Plaintiff's therapist diagnosed Plaintiff with anxiety and depression stemming from the Defendants' conduct.

62. Plaintiff has been prescribed Zoloft and Xanax to treat such diagnoses, which she continues to take daily per her doctor's instructions.

63. Prior to the Defendants' actions against her, Plaintiff had never been diagnosed with anxiety, depression, or any other emotional condition, nor had she otherwise experienced any significant trauma.

### Plaintiffs Are Entitled to Relief Pursuant to 42 U.S.C. § 1983

64. Despite possessing a warrant, the Defendants lacked probable cause to search Plaintiff's apartment because the warrant was supported by hearsay and other unreliable information from a confidential informant.

65. Therefore, the Defendants also lacked probable cause to arrest Plaintiff.

66. Additionally, the Defendants lacked probable cause to arrest Plaintiff because there was insufficient evidence to indicate she had knowledge of the imitation firearms that were hidden within her apartment and other secured areas within her apartment building to which she lacked access.

67. The Defendants, acting in concert with each other, fabricated evidence through the making of false and misleading factual statements related to the items recovered from Plaintiff's residence, as well as Plaintiff's location within the residence when they arrived.

68. The Defendants, acting in concert with each other, forwarded such statements to the Queens County District Attorney's Office, resulting in the deprivation of Plaintiff's liberty and subsequent prosecution on felony charges.

69. The Defendants, acting in concert, subsequently reiterated their false statements to members of the Queens County District Attorney's Office, resulting in the continued prosecution of Plaintiff on felony charges for more than one year.

70. By doing so, the Defendants, individually and collectively, subjected the Plaintiff to false arrest, imprisonment, and the fabrication of evidence in violation of Plaintiff's rights under the United States Constitution.

71. As stated above, the Queens County District Attorney's Office dismissed Plaintiff's felony charges on or about December 18, 2020; the remaining misdemeanor charges pending against Plaintiff were dismissed by Court order dated February 25, 2022 and ACD disposition dated June 27, 2022.

72. By reason thereof, the individual Defendants, acting in both their professional and individual capacities, have violated 42 U.S.C. § 1983 and caused Plaintiff and her children to suffer emotional injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of Plaintiffs' Constitutional rights.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment against all Defendants, and award Plaintiffs:

- A. Compensatory damages;
- B. Attorneys' fees;
- C. Punitive damages against each Defendant in his professional and/or individual capacity, and;
- D. Any other relief the Court deems just and appropriate.

Dated: December 6, 2022

                                          **Mancilla & Fantone, LLP**

                                          By:   /s/ Robert Fantone
                                                    Robert Fantone, Esq.
                                                    260 Madison Avenue
                                                    New York, New York 10016

        (646) 225 – 6686  
        robert@law-mf.com  
        Attorney for Plaintiff

**Joseph W. Murray, Esq.**

By:   /s/ Joseph Murray  
      Joseph Murray, Esq.  
      185 Great Neck Road, Ste. 461  
      Great Neck, New York 11021  
      (646) 838 – 1702  
      joe@jmurray-law.com  
      Attorney for Plaintiff