```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  ELIZAVETA ZLATKIS,                                        :
                                                            :
                                   Plaintiff,               :
                                                            :     MEMORANDUM DECISION AND
                  -against-                                 :     ORDER
                                                            :
  NYPD OFFICER DEMITRIO RAPTIS and                          :     22-cv-7402 (BMC)
  NYPD SERGEANT CHRISTOPHER M.                              :
  COLON,                                                    :
                                                            :
                                                            :
                                   Defendants.              :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this case for malicious prosecution and fabrication of evidence under 42 U.S.C. § 1983.[1] The case arises out of the execution of a search warrant based on information from a confidential informant ("CI") that led to the recovery of what officers say they believed were 14 firearms. Plaintiff's argument is that the police knew or should have known that these firearms were either just starter pistols or otherwise not operable instead of charging plaintiff with felony firearms counts which did not cover inoperable weapons.

The case is before me on defendants' motion for summary judgment on both claims and plaintiff's motion for summary judgment on her fabrication of evidence claim. At the very least, defendants have qualified immunity as to plaintiff's malicious prosecution claim. However, because plaintiff raises a genuine question as to a material fact on her fabrication of evidence claim, both parties' motions for summary judgment on that claim is denied.

---

[1] As a result of prior rulings in the case and plaintiff's withdrawal of claims against certain defendants, only plaintiff's claims for malicious prosecution and fabrication of evidence against Officer Raptis and Sgt. Colon remain. Her claims on behalf of her children have also been withdrawn.

## BACKGROUND

Defendant and then-Sgt. Christopher Colon received information from a CI that plaintiff's husband, with whom she resided, had firearms within his residence and in the basement of the residence. The CI reported that plaintiff was also present in the apartment when her husband showed the CI the firearms, although she did not witness the actual showing. Plaintiff did, however, observe through a window the CI extending her arms, holding what appeared to be a weapon.

Based on the CI's information, the District Attorney obtained a search warrant. At the time the warrant was executed, plaintiff was in the apartment with her two children, but her husband, the target of the search, was not. Police recovered what they say they believed were nine firearms behind a vanity in the bathroom (where the CI had said they would be) as well as ammunition in socks. Police also recovered three .38 caliber starter pistols, a box of shell casings, and what defendants stated to be a defaced black revolver and a .6 mm Derringer pistol.

Plaintiff was arrested and charged with two counts of felony possession of multiple firearms under the New York Penal Code; misdemeanor possession of imitation pistols and ammunition under the New York City Administrative Code; and misdemeanor charges under the New York State Penal Code for endangering the welfare of a child. The defendant officers inventoried and turned the weapons over to the NYPD Firearms Laboratory. Officer Raptis sent documents and photographs related to plaintiff's arrest to the District Attorney and provided an assistant District Attorney with the information necessary to draft a felony complaint against plaintiff, which Officer Raptis also reviewed for accuracy before executing. There is no evidence that the defendant officers had anything to do with the case after that. After arraignment, plaintiff was released on her own recognizance without conditions or restrictions.

Two or three days after plaintiff's arraignment, the items seized in the search were tested by the NYPD Firearms Laboratory. The following chart lists the items seized and the results of the evaluation. "NAF" means "Not a Firearm," which is defined as "anything appearing to be a firearm but [which] is not capable of firing a cartridge."

|    | Item Recovered | Recovering Defendant | Location of Item | Criminal Crt Charge | Firearms Lab Results |
|----|---|---|---|---|---|
| 1  | Zoraki (Aatak Arms)-model914-TD-9mm Serial# 1116-002121 | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 2  | Zoraki (Atak Arms)- model R1-TD 9mm Revolver Serial# 0417-000249 | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 3  | EKOL- Model special 99- 9mm Serial #EV780142 | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 4  | Mondial- model 99x-.22 Caliber Serial #UNK | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 5  | Mondial-model 199-.22 Caliber Serial # UNK | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 6  | Mondial- model 999- .22 Caliber Serial l#A97876 | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 7  | RTS- model 1962- Unk caliber- Serial # UNK | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 8  | Mondial- model 99x- .22 caliber- Serial # UNK | LaClair | Bathroom Vanity | Firearm (PL 265) | NAF |
| 9  | Walther AirPistol - Serial # 11L08668 | LaClair | Bathroom Vanity | Imitation pistol (AC 10-131) | NAF |
| 10 | Starter Revolvers Denix Mark IV .38 Cal Starter Revolvers Serial #s UNK | Porcelli | Box in dining room | Imitation pistol (AC 10-131) | NAF |
| 11 | Starter Revolvers Denix Mark IV .38 Cal Starter Revolvers Serial #s UNK | Porcelli | Box in dining room | Imitation pistol (AC 10-131) | NAF |
| 12 | Starter Revolvers Denix Mark IV .38 Cal Starter Revolvers Serial #s UNK | Porcelli | Box in dining room | Imitation pistol (AC 10-131) | NAF |
| 13 | Black revolver | Porcelli | Box in dining room | Firearm (PL 265) | Inoperable |

3

| 14 | Derringer/Kimar- .6mm Caliber Model: unk Serial # D18722 | Goldberg | Camera bag in bedroom | Firearm (PL 265) | NAF |

About one year after the release of the lab report, the District Attorney dropped the felony charges against plaintiff, but continued to prosecute her on the possession charges and for endangering the welfare of a child. Two years after plaintiff's initial arrest, plaintiff accepted an adjournment in contemplation of dismissal, which resulted in dismissal of the remaining charges against her.

## DISCUSSION

### I.     Malicious Prosecution

To maintain a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show a violation of her rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. Cornelio v. Connecticut, 32 F.4th 160, 178 (2d Cir. 2022). To state a claim for malicious prosecution under New York law, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." Dettelis v. Sharbaugh, 919 F.3d 161, 163-64 (2d Cir. 2019) (internal quotation marks and quotation omitted). In addition, to survive summary judgment on a claim for malicious prosecution under § 1983, the plaintiff must establish that "there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citation omitted).

Courts apply a two-step process in evaluating whether qualified immunity applies. Qualified immunity shields federal and state officials from money damages unless the facts demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right

4

was clearly established at the time of the challenged conduct." Sabir v. Williams, 52 F.4th 51, 58 (2d Cir. 2022) (internal quotation marks and quotation omitted). For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). It is not necessary to find a "case directly on point" to show that the law governing a plaintiff's claim is clearly established, but existing precedent must have placed the constitutional right "beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citations omitted). Additionally, the right must have been recognized by either the Supreme Court or the Second Circuit. Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009) (citing Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004)).

When qualified immunity shields defendants from liability, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" Kass v. City of New York, 864 F.3d 200, 206 (2d Cir. 2017) (quoting Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013)).

Plaintiff has not responded to or addressed defendants' invocation of qualified immunity. That may be because no case clearly establishes or even suggests a right to be free from prosecution for possessing what appear to be firearms where only a later, post-arrest lab report informs the prosecutor whether the firearms, although appearing to be firearms, meet the technical specifications required under particular statutes for the type of weapon charged. Requiring police officers at the time of arrest or arraignment to make that determination of what

5

the lab report would later say strikes this Court as similar to requiring officers to decide on the scene which of two conflicting witnesses to believe, which of course is not required. See Islam v. Tirelli, No. 22-cv-812, 2024 WL 4467188 (E.D.N.Y. Oct. 10, 2024).

In the absence of any caselaw defining the "contours of the right" that plaintiff advances, plaintiff relies on some circumstantial evidence in an effort to show that these defendants knew, or at least should have known, that some of the items seized did not technically fall within the felony firearm statutes under which she was charged. Specifically, she points out that the "black revolver" (item 13) didn't have a trigger, firing pin, or hammer; that the Zoraki revolver (item 1 or 2) displayed the word "Blank" on its barrel and was recovered with literature explaining that it is not an operable firearm, which Officer Raptis testified as remembering seeing during the search; that defendants were experienced with firearms; that the brand names of some of the items (Zoraki, Mondial, Ekol), put the defendants on notice that these were not firearms; and that two of the items (the Zoraki and Ekol) were loaded with blank ammunition. Moreover, she points out that defendants admitted at their depositions that they were not sure whether some of the items described in the felony complaint were technically firearms within the definition of the felony firearms statute. At the very least, plaintiff contends, these facts suggest that defendants were reckless in filing a criminal complaint charging her with felony weapons possession.

Defendants respond on a weapon-by-weapon basis. The black revolver (item 13), although it did not have a trigger, firing pin, or a hammer, was recovered in the same box as a set of gun parts that included triggers and firing pins. Defendants next point out that the record is undisputed that the Zoraki, Mondial and Ekol pistols could easily be converted into live-fire weapons. And plaintiff has not explained how defendants could have deduced that the Derringer was considered "not a firearm" under the statute. Finally, defendants point out that they

6

inventoried those weapons that were starter pistols as starter pistols, which demonstrates that they took care to differentiate the type of instruments they seized.

Both sides' contentions, however, are offered in the context of probable cause. As noted above, plaintiff did not respond to defendants' qualified immunity argument. When viewed in that context, the facts on which plaintiff relies inexorably demonstrate why qualified immunity is proper here. A court may grant qualified immunity after a finding of liability "if an officer has made a reasonable mistake of law, *i.e.*, if the constitutional violation he [or she] has committed was not a 'clearly established' violation." Jackson v. Tellado, 236 F. Supp. 3d 636, 662 (E.D.N.Y. 2017) (citation omitted). Most importantly for our purposes, "[t]he qualified immunity standard is an objective standard, asking not whether the defendant officer acted in good faith or what he himself [or she herself] knew or believed, but rather what would have been known to or believed by a reasonable officer in the defendant's position." Outlaw v. City of Hartford, 884 F.3d 351, 367 (2d Cir. 2018) (citation omitted).

Because the standard is objective, defendants' experience with or knowledge of firearms, uncertainty about whether the felony firearms statute covered these particular firearms, or whether the firearms could be made operable or lethal simply attaching parts that were found adjacent to them, are not material facts for purposes of qualified immunity. The question is not what they did or knew; it is what a reasonable police officer in their situation would have done or known. Id. On that question, plaintiff has offered nothing. She appears to consider it intuitive that a reasonable police officer would not have charged felony firearms possession under these circumstances. But it is not intuitive to me. Although I do not accept defendants' argument that plaintiff had to submit an expert affidavit from a police procedure or ballistics expert to demonstrate that defendants' charging decision was beyond the pale, it seems to me that

7

defendants have introduced enough undisputed facts to make out a *prima facie* case of their qualified immunity defense, and with plaintiff simply assuming that a reasonable police officer would have acted otherwise, defendants' qualified immunity argument stands unrebutted.

A very similar situation occurred in Vett v. City of New York, No. 20-cv-2945, 2023 WL 7325926 (S.D.N.Y. Nov. 7, 2023). There, the plaintiff was charged with attempted criminal possession of a firearm even though the "weapon" he possessed was a plastic frame of a firearm that certainly wasn't shootable – it was merely a plastic 3-D print of the weapon's frame. Nevertheless, the court noted that "it certainly looks like part of a gun: it has a handle, an opening where a barrel would typically go, and two parallel pieces of plastic protruding from the front of it, where a cylinder could be attached." Id. at *3. The court therefore dismissed plaintiff's false arrest claim based on qualified immunity:

> [E]ven if Defendants did not have probable cause to arrest Plaintiff, they had "arguable probable cause" to do so, and so are qualifiedly immune from the suit.
> …
> [Plaintiff's] arguments against qualified immunity do not address "arguable probable cause." They are based [on] the legally incorrect premise that Defendant Officer Taylor needed to have some specialized knowledge of 3D printing and firearms operability in order to have arguable probable cause. When assessing arguable probable cause/qualified immunity, the issue is not Taylor's subjective beliefs, but whether a reasonable officer could have objectively believed, based on what he saw and was told, that a crime was being perpetrated. Taylor's lack of personal knowledge about 3D printers and firearm operability, while undoubtedly relevant to the existence of actual probable cause, is not relevant to the question of a reasonable police officer's objective belief upon seeing a partially printed gun and being told that there was bad blood between the person doing the printing and his co-workers. . . . At the time of the arrest, that was all the information available to Taylor and Kelly. A reasonable officer could have concluded that a crime was being perpetrated – or, at the very least, it is not possible that no reasonable officer could have reached such a conclusion, based on the available information.

Id. at *14-15.

The same result obtains here.  The police officers did not have to be experts on firearms alterations.  The weapons leading to the charges had the appearance of firearms that were or could be readily converted to shootable weapons.  The officers delivered the weapons to the police lab; the lab did the technical work and reported the results to the District Attorney; and the District Attorney made the decision as to what charges to press going forward.  Accordingly, defendants are protected by qualified immunity from plaintiff's malicious prosecution claim.

## II.     Fabrication of Evidence

To maintain a fabrication of evidence of claim under § 1983, a plaintiff must show that the defendant officer knowingly fabricated evidence; that the evidence would be likely to influence a jury's decision; that the officer forwarded the fabricated evidence to the prosecutor; and that the plaintiff suffered a deprivation of liberty as a result.  Ashley v. City of New York, 992 F.3d 128, 139 (2d Cir. 2021) (quotations omitted).  An officer's mistake in identifying evidence, without any suggestion that he deliberately misidentified it, cannot support a claim for fabrication of evidence.  See Bennett v. Vidal, 267 F. Supp. 3d 487, 499 (S.D.N.Y. 2017).

Unlike on a malicious prosecution claim, neither probable cause for an arrest nor qualified immunity are available defenses.  See Garnett v. Undercover Officer C0039, 838 F.3d 265, 275-76 (2d Cir. 2016); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 129-30 (2d Cir. 1997).  In other words, a fabrication of evidence claim "can stand even if the officer had probable cause to arrest the . . . plaintiff."  Garnett, 838 F.3d at 277-78.  The question is not what a reasonable officer would have done in the situation, but whether *these* defendants knowingly forwarded fabricated evidence to the prosecutor.

On a fabrication of evidence claim, "[i]nformation may be 'false' if material omissions render an otherwise true statement false."  Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015).

9

Both affirmative misrepresentations and misleading omissions "threaten the integrity of the judicial process by injecting it with falsity provided by officers of the state whose official status gives this misinformation a special aura of reliability." Id. at 548-49.  Here, plaintiff provides sufficient evidence to raise a genuine question of whether defendants reported the items recovered from plaintiff's apartment as firearms to the District Attorney while knowingly omitting that the weapons were inoperable or otherwise not firearms.

Defendants themselves admit that the items were "misidentified" in the criminal court complaint against plaintiff based on information provided to the assistant District Attorney by Officer Raptis and as reviewed by him for accuracy.  And as discussed above, plaintiff presents evidence that the items recovered from her apartment were visibly inoperable or not firearms and that defendants observed these visible cues while searching her apartment.  For example, both defendants admitted to inspecting the items recovered from plaintiff's apartment, knowing that a trigger and firing pin are necessary for an item to be deemed a firearm, and yet the item listed as a black revolver in the criminal court complaint visibly lacked a trigger, firing pin, and hammer.  Another item clearly displayed the work "blank" on its barrel and was recovered from a box that also contained a pamphlet, clearly visible on Officer Raptis' bodycam, stating prominently "GAS ALARM" and "BLANK REVOLVER."  Officer Raptis admitted to seeing this pamphlet during the search.  Despite these obvious indications that the item was not a firearm, there is no mention of such classification in the criminal court complaint.  Although not sufficient evidence to conclude beyond dispute that defendants *knew* the weapons were inoperable or not firearms, this evidence is sufficient to at least raise a genuine dispute as to defendants' knowledge, and thus defeat their motion for summary judgment.

As to the other elements of a fabrication of evidence claim, it is indisputable that the operability and classification as a firearm of the items recovered from plaintiff's home would influence a jury's decision as to whether she was guilty of felony possession of multiple firearms, as such charges require the possession of operable firearms.  This element of a fabrication of evidence claim is met when the fabricated evidence would be likely to influence a jury's decision if the case came before a jury.  See Nnodimele v. Derienzo, No. 13-cv-3461, 2016 WL 337751, at *12-13 (E.D.N.Y. Jan. 27, 2016).  Thus, "defendants err in arguing that only that evidence admissible at [a] criminal trial can provide a basis for an evidence manufacturing fair trial claim."  Id. at *12 (admissibility "is not a prerequisite to recover for injuries caused by the fabrication.").

Furthermore, plaintiff suffered a deprivation of liberty because she was prosecuted for a year on felony charges based on the omission of the true nature of the items recovered from her home.  See Barnes v. City of New York, 68 F.4th 123, 129-30 (2d Cir. 2023) ("The use of fabricated evidence in initiating a prosecution . . . may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence.").  Such a prosecution constitutes a deprivation of liberty caused by the fabrication of evidence even if "a plaintiff simultaneously was charged, detained, tried, and convicted for a separate offense."  Id.  "[B]eing framed and falsely charged damages an individual's reputation, requires that individual to mount a defense, and places him in the power of a court of law," constituting a deprivation of liberty.  Id. at 130 (quoting Garnett, 838 F.3d at 279).

Because plaintiff raises a genuine question of material fact, but does not prove, whether defendants knowingly fabricated the information sent to the District Attorney, both motions for summary judgment are denied as to this claim.

11

## CONCLUSION

Defendants' motion for summary judgment is granted as to plaintiff's malicious prosecution claim. Both motions for summary judgment are denied as to plaintiff's fabrication of evidence claim. By separate order, the Court will set this matter down for trial on plaintiff's fabrication of evidence claim.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       March 7, 2025